FRONT RUNNER MESSENGER SERVICE, INC., an Illinois Corporation, Oliver Innocenzi, Michael Posner, Robert Plummer, Phillip Barile, and James Wightman, Plaintiffs,

v.

Fidel GHINI, Individually and as Mayor of the City of Highwood, the City of Highwood, a Municipal Corporation of and in the State of Illinois, Charles Sheahan, Individually and as Chief of the Police of the City of Highwood, Mark Hall, Frank Reinier, and other Unknown Members of the Highwood Police Department, Individually and as Police Officers of the City of Highwood, Defendants.

No. 78 C 2241.

United States District Court,
N. D. Illinois, E. D.

March 22, 1979.

306

Mark M. Zide, Peter J. Collins, Ltd., Waukegan, Ill., for plaintiffs.

Charles A. Boyle, Chicago, Ill., for defendants Nos. 1 and 2.

A. Jeffrey Seidman, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant Asst. City Atty. Steve Handler.

Wallace B. Dunn, Highwood, Ill., Miles J. Zaremski, Michael R. Dockterman, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for remaining defendants.

## MEMORANDUM AND ORDER

ROBSON, Senior District Judge.

This cause is before the court on defendants' Fidel Ghini's, the City of Highwood's, Charles Sheahan's, Mark Hall's, Frank Reinier's and Other Unknown Members of the Highwood Police Department's motion to dismiss the amended complaint for failure to state a claim. For the reasons hereinafter stated, the motion shall be granted.

The corporate plaintiff, Front Runner Messenger Service, Inc., [hereinafter Front Runner] brings this action pursuant to the Fifth and Fourteenth Amendments and 42

U.S.C. § 1983 [hereinafter § 1983], to recover damages resulting from defendants' alleged unconstitutional interference with its right to engage in the race track messenger service. Plaintiff Oliver Innocenzi [hereinafter Innocenzi] is Front Runner's lessor. Plaintiff Robert Plummer is an employee and manager of Front Runner. Plaintiff Michael Posner [hereinafter Posner] is a business associate of Plummer. Plaintiff Phillip Barile [hereinafter Barile] is a carpenter who was hired to do work at Front Runner's place of business. Plaintiff James Wightman [hereinafter Wightman] is also an employee of Front Runner. The individual plaintiffs also seek, pursuant to the Fifth and Fourteenth Amendments and § 1983, to recover damages resulting from alleged unlawful, warrantless arrests and alleged excessive detentions that defendants effectuated because of their relationship to Front Runner. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Defendants dispute jurisdiction claiming that the doctrine of equitable restraint requires this court to dismiss the action.

Defendants' second grounds for their motion to dismiss is that the allegations of the complaint fail to state a claim for relief under § 1983. In particular, defendants contend that the amended complaint does not state a claim for bad faith harassment and that one of the defendants, Steve Handler, is absolutely immune from liability. Briefs have been submitted in support, in opposition and in reply to the motion.

I. Factual Background

Taking the allegations of the amended complaint as true for purposes of this motion, plaintiffs allege that Front Runner is an Illinois corporation that has done business as a race track messenger service at 427 Sheridan Road in Highwood, Illinois. The City of Highwood [hereinafter Highwood] is a municipal corporation located in the Second District of the Illinois Appellate Court. On April 20, 1978, the Illinois Appellate Court for the First District held unconstitutional section 39.1 of the Illinois

Horse Racing Act of 1975, Ill.Rev.Stat. ch. 8 § 37–1 et seq. (as amended 1977). The First District Appellate Court ruled that Section 39.1 unconstitutionally restrained Illinois corporations engaged in the race track messenger service business in their right to engage in business without a proper nexus to a legitimate state need. *Finish Line Express, Inc. v. City of Chicago,* 59 Ill. App.3d 419, 420, 16 Ill.Dec. 653, 654, 375 N.E.2d 526, 527 (1978). On July 14, 1978, the Illinois Supreme Court reversed. *Finish Line Express, Inc. v. City of Chicago,* 72 Ill.2d 131, 19 Ill.Dec. 626, 379 N.E.2d 290 (1978).

Plaintiffs allege that subsequent to the appellate court ruling on April 28, 1978, but prior to the Illinois Supreme Court reversal, defendant Fidel Ghini [hereinafter Ghini], the Mayor of Highwood, ordered the Highwood Police to arrest workmen doing minor redecoration on Front Runner's premises for a "supposed" building code violation. Plaintiffs allege that these arrests were made without probable cause and as part of a policy established by Ghini to engage in bad faith harassment of plaintiffs because of their business activity.

Plaintiffs further allege that on April 28, 1978, Ghini threatened Innocenzi by stating that if Innocenzi did not evict his tenant, Front Runner, Ghini would "close down other legitimate businesses owned by Innocenzi."

Plaintiffs further allege that on May 1, 1978, defendants Highwood Police Officer Mark Hall [hereinafter Hall] and other Unknown Highwood Police Officers, while acting under the direction of defendant Police Chief Charles Sheahan [hereinafter Sheahan], arrested, without a warrant and without probable cause, Plummer, Barile, Posner and Innocenzi, for violation of local gambling ordinances. Plaintiffs allege that these defendants unlawfully and maliciously held the arrestees in custody for an excessive length of time despite the fact that each arrestee could post the requisite bond at the time of his arrest.

Plaintiffs allege that on May 2, 1978, "with knowledge that a temporary restrain-

ing order existed which enjoined them from harassing Front Runner and Innocenzi," Assistant City Attorney Steve Handler [hereinafter Handler] and Police Officer Frank Reinier [hereinafter Reinier] gave false testimony to Lake County Circuit Court Judge William Homer in order to obtain an arrest warrant against Innocenzi. Plaintiffs further allege that these defendants knew or should have known that no probable cause existed for the warrant because it charged Innocenzi with a building code violation, building on his premises without a required permit, when no violation existed. Plaintiffs allege that following Innocenzi's arrest pursuant to the falsely obtained warrant, Reinier and other Unknown Highwood Police Officers maliciously held Innocenzi "in custody for an excessive length of time despite his ability to post bond at the time of his arrest." In his separate count, Innocenzi alleges that this arrest was prosecuted to a jury trial resulting in acquittal. Innocenzi asserts that Highwood prosecuted him in bad faith because on May 16, 1978, Lake County Circuit Court Judge Lloyd Van Deusen had ruled that, as a matter of law, no building permit was needed.

Plaintiffs allege that on May 12, 1978, Police Chief Sheahan stationed himself on Front Runner's premises for approximately one and one-half hours in order to intimidate and harass Front Runner's employees and customers. Plaintiffs allege that on May 13, and 15, 1978, an Unknown Highwood Police Officer spent a similar amount of time on its premises for the same purpose.

Plaintiffs further allege that on May 16, 1978, Reinier and Unknown Highwood Police Officers held Plummer and Wightman in custody for an excessive length of time despite the fact that each arrestee was able to post the requisite cash bond from the time of his arrest.

Plaintiffs allege that on May 31, 1978, another temporary restraining order was entered in Lake County Circuit Court enjoining Police Chief Sheahan from arresting Front Runner employees. Despite the order Police Chief Sheahan "failed to rescind a letter dated May 31, 1978, he had written to Illinois Bell Telephone informing it of arrests made at Front Runner's premises." Plaintiffs further allege that on June 2, 1978, its phone service was cut off.

On June 6, 1978, Wightman's trial was held and the court entered a verdict of not guilty by reason of the above-mentioned holding of the Illinois Appellate Court for the First District. An appeal of this verdict is currently pending before the Illinois Appellate Court for the Second District.

The amended complaint contains six counts, one for each plaintiff, and the allegations set out above form the basis of each plaintiff's claim for relief. Plaintiffs all seek compensatory and punitive damages.

II. Discussion

In their complaint, plaintiffs characterize defendants' conduct as "nothing more than bad faith harassment . . . perpetrated with a willful, malicious intent to disregard the then judicially declared right of the Corporate Plaintiff [Front Runner] to engage in a then legitimate business." *

 Defendants contend that the doctrine of equitable restraint requires dismissal of this action. The court finds that the doctrine of equitable restraint is inapplicable. The doctrine requires a federal court to refrain from issuance of an injunction against state authorities when the authorities are prosecuting the federal plaintiff under an unconstitutional state statute. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Equitable restraint reflects the principle of comity that requires the federal plaintiff to raise his *fed-*

---

* Fed.R.Civ.Proc. 10(b) requires that "Each claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count or defense . . ." According to the organization of plaintiffs' complaint, each plaintiff is seeking relief for one claim of "harassment," based on the series of acts defendants allegedly committed from April 28, to May 31, 1978. In its present form, this amended complaint only seeks relief for "harassment" based upon multiple occurrences.

*eral* constitutional objections in the state proceedings because the state judiciary is presumed to apply constitutional standards as established by the Supreme Court. The bad faith harassment exception provides that, if state authorities use the criminal process for the purposes of harassing federal plaintiffs in a constitutionally protected activity, such as protected expression, then injunctive relief is appropriate. *Grandco Corp. v. Rochford,* 536 F.2d 197, 202, 204 (7th Cir. 1976).

Putting aside the question whether the doctrine of equitable restraint applies when the sole relief sought is monetary damages, *see Zurek v. Woodbury,* 446 F.Supp. 1149, 1152 (N.D.Ill.1978) (Robson, S. J.), the ordinances under which plaintiffs were prosecuted were constitutionally suspect solely by reason of state law. There was no federal constitutional defect that the state court could have addressed. Thus, the doctrine of equitable restraint and its exception for bad faith harassment is not applicable in this action.

■ While plaintiffs assert that they are entitled to relief for "bad faith harassment," in essence, they are asserting that their due process rights were violated when the Highwood authorities decided to enforce local gambling ordinances in the face of a First District Appellate Court ruling that held that the state lacked the requisite authority to regulate race track messenger services. The court finds that the conduct complained of fails to state a claim for a violation of due process.

When the Illinois legislature passed section 39.1 prohibiting race track messenger services, law enforcement officials throughout the state were required to prosecute persons who were engaged in this illegal conduct. The ruling by one appellate court that the legislature lacked the requisite authority to regulate these businesses prevented officials within that judicial district from enforcing gambling ordinances until that decision was overruled by the Illinois Supreme Court. Nonetheless, with respect to law enforcement officials outside that district, specifically the defendants in this

action who are within the geographical area comprising the Second District Appellate Court, the legislative mandate continued. Furthermore, in order to place the same question of power of the state to regulate messenger services before the Second District Appellate Court, a coordinate court that could reach a different result than the First District Appellate Court, defendants were required to vigorously enforce Highwood's gambling ordinances against plaintiffs. The acts complained of were necessary to accomplish this lawful goal, and therefore fail to state a claim of violation of plaintiffs' due process rights. Accordingly, the motion to dismiss shall be granted.

■■ In addition, Handler raises an alternative ground for dismissal that applies to him alone. Handler contends that he is absolutely immune from liability for acts committed in his capacity as assistant city attorney. Plaintiffs respond that a prosecutor is clothed with merely a "good faith" immunity and that their complaint seeks relief for Handler's bad faith conduct, thereby stating a claim under § 1983. Contrary to plaintiffs' contention, an assistant city attorney while performing his duties as a prosecutor is absolutely immune from liability under § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Daniels v. Keiser,* 586 F.2d 64 (7th Cir. 1978). Handler's conduct in obtaining an arrest warrant was conduct within the prosecutorial function of his office. Even if Handler obtained the warrant by means of false testimony he is immune from suit. *United States v. McCann,* 407 F.Supp. 518, 519 (E.D.Pa.1976). Accordingly, the amended complaint shall be dismissed as to Handler individually, on the alternate grounds he has raised.

### III. Conclusion

For the reasons stated, it is therefore ordered that defendants' motion to dismiss the amended complaint for failure to state a claim shall be, and the same is hereby, granted.